**SO ORDERED.**

**SIGNED this 14 day of July, 2008.**



*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Designated for online use; not designated for print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| MICHAEL L. BERGMAN and JOYCE A. BERGMAN, | CASE NO. 07-40285 CHAPTER 12 |
| DEBTORS. | |
| NATIONAL FARMERS UNION INSURANCE COMPANY, | |
| PLAINTIFF, | |
| v. | ADV. NO. 07-7060 |
| MICHAEL L. BERGMAN, | |
| DEFENDANT. | |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In this adversary proceeding, creditor National Farmers Union Insurance Company (hereafter NFU) objects to discharge of its claim against Debtor Michael L. Bergman (hereafter Debtor) pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). The Court has jurisdiction.[1] NFU's motion for summary judgment on the §§ 523(a)(2)(A) and (a)(6) claims has been fully briefed and is ready for determination. Plaintiff NFU appears by Charles T. Engel and Jason E. Geier, of Engel & Geier, P.A. Debtor Michael Bergman appears by Justice B. King of Fisher, Patterson, Sayler & Smith, L.L.P. There are no other appearances. For the reasons stated below, the Court denies the motion.

**FINDINGS OF UNCONTROVERTED FACT.**

Prepetition Debtor engaged in custom cutting through Bergman Farms Custom Harvesting, Inc. Commencing in about 1997, Debtor began purchasing property damage insurance coverage from NFU. As Debtor's farming operation grew, the amount of insurance business Debtor did with NFU also increased from just a few machines to a total of ten machines being insured by NFU. There were several occasions during Debtor's relationship with NFU in which claims needed to be paid for property damage to some of Debtor's equipment. As far as Debtor was concerned, he never had any problem with those claims paid by NFU. At times relevant to this action, NFL had issued to Debtor insurance policy number 1F0295744-1051012 (hereafter Policy) providing farm general liability, property, and casualty coverage.

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

On or about February 26, 2004, Debtor entered into a Lease Agreement (hereafter Lease) with First National Equipment Financing, Inc. (hereafter Leasing) for a used John Deere 9650STS combine, serial number H09650S685987 (hereafter Combine) and a used John Deere draper header (hereafter Header). At that time, Debtor had previously entered into other leases and was familiar with how leasing of machinery and equipment worked. Prior to entering into the Lease, Debtor had also entered into security agreements and knew about and understood security interests. The Lease provides that Leasing "shall at all times be and remain" the sole owner of the Combine and Header, that Debtor "shall bear the entire risk of loss," that Debtor "shall notify Lessor immediately" if the Combine or Header suffered loss or damage; and that Debtor "shall provide, maintain, and pay for insurance against the loss, theft, destruction of or damage to" the equipment. Leasing filed a UCC-1 in the Office of the Kansas Secretary of State. Michael L. Bergman is identified as the debtor and Leasing is identified as the secured party. The collateral description in the financaing statement states "this filing is made in connection with a lease" and describes the leased equipment by make, model, and correct serial numbers. NFU issued a Certificate of Liability Insurance that correctly described the Combine by serial number and identified Leasing as "Loss Payee & Additional Insured." A schedule to the insurance Policy erroneously states the serial number as H09650S6859987. Bish, a representative of NFU, testified that the error was typographical.

The Combine and a header different from the one subject to the Lease were damaged in a roll over accident in Oklahoma on October 30, 2005. This action concerns only the claim for damage to the Combine. In order to be paid by NFU, Debtor had to report a claim to NFU and work with NFU in determining the amount for NFU to pay. NFU's agent entered the claim for

3

Case 07-07060   Doc# 44   Filed 07/14/08   Page 3 of 13

damages to the Combine into NFU's electronic claims system and this notice informed Brandt Bish of NFU that Debtor had filed a damage claim.  Without prior notice to Debtor, Bish initiated a phone call with Debtor.  During that call, which lasted two to three minutes, Debtor and Bish discussed appraisal of the damage, depreciation, and the settlement amount.  Bish suggested that John Deere had a lien on the Combine, and Debtor did not correct this information.  After the call, Bish completed the Proof of Loss form and mailed it to Debtor.  Debtor looked over the terms of the Proof of Loss, and, on January 3, 2006, approximately 10 days after receipt, signed the form under oath and returned it to NFU.  When he signed the Proof of Loss, Debtor expected that the next step would be the issuance of a check.

The Proof of Loss stated that the actual cash value of the Combine at the time of loss was $185,000, that the whole loss and damages was $87,481,49, and the amount claimed was $74,030.64.  It also stated: "At the time of the loss the interest of the Insured in the property described was sole and unconditional ownership, and no other person or persons had interest therein, except John Deere Credit."  Neither NFU before creating the Proof of Loss nor Debtor before signing the Proof of Loss checked any records concerning ownership and liens in the Combine.  The NFU policy lists at least ten different lien holders.  In fact, John Deere Credit had no interest in the Combine; Leasing owned the Combine and, as lessor, had filed a UCC-1 with the office of the Kansas Secretary of State.

NFU issued a check jointly payable the Debtor and John Deere Credit in the amount of $74,030.64 and mailed it to Debtor.  The check was sent to John Deere Credit, and, after endorsing the check, John Deere Credit returned it to Debtor.  Debtor then deposited the check in his checking account.  Normally, when Debtor received insurance proceeds he would obtain the

4

necessary lienholder endorsement and then use the insurance proceeds to fix the equipment, doing the work in house. Bish anticipated that Debtor would take the NFC check and do his own repairs on the equipment that got damaged. Debtor completed some repairs and used the Combine during the 2006 harvesting season. Debtor understood that once a lienholder endorses a check and gives Debtor the proceeds, he has an obligation to use the money to repair the equipment.

Debtor did not give Leasing notice of the October 2005 damage to the Combine. In late 2006, Leasing repossessed the Combine. An extensive inspection of the Combine was undertaken. The extent to which Debtor repaired the October 2005 damage to the Combine is controverted, but it is uncontroverted that when repossessed the Combine was not in return condition and that Debtor did not complete all the repairs of the Combine which he intended.

On March 19, 2007, Debtor filed a voluntary petition under Chapter 12. Leasing, as loss payee under the NFU Policy, demanded payment from NFU for the damage sustained in the October 2005 accident. The demand letter incorrectly referred to the Combine as having serial number H09650S665987. In April 2007, NFU issued a check to Leasing for $65,816.36.

NFU filed this dischargeabilty complaint on June 22, 2007. It alleged that the Proof of Loss was fraudulent; that its payment of $74,030.64 to Debtor was made in reliance on false oath; that Debtor did not use the insurance proceeds to repair the Combine; that Debtor's actions were done voluntarily, knowingly, maliciously, and intentionally; and that NFU suffered loss relying on the false oath because it was legally liable to pay $65,816.36 to Leasing as loss payee. NFU's asserts that its claim against Debtor should be excepted from discharge pursuant to §§

5

523(a)(2)(A), (a)(4), and (a)(6). On July 23, 2007, NFU filed a proof of claim for $65,816.36. NFU moves for summary judgment under §§ 523(a)(2)(A) and (a)(6).

**SUMMARY JUDGMENT STANDARD.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A genuine issue of material fact is a factual dispute that may affect the outcome of the case and one that a reasonable trier of fact could find in favor of either party.[3] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[4]

The initial burden is on the moving party to establish the absence of a genuine issue concerning any material fact.[5] If the movant fails to fulfill this initial burden, summary judgment can not be entered even if the non-moving party does not come forward with evidence in support of its position.[6] "'[T]he party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then

---

[2] Fed. R. Civ. P. 56(c). Future references to the rules in the text shall be to the rule number only.

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5] *Adikes v. Kress & Co.*, 398 U.S. 144, 159-160 (1970).

[6] *Id.*

6

he is not entitled to judgment. No defense to an insufficient showing is required.'"[7] In this Court's view, the standard for granting summary judgment is particularly difficult to fulfill when knowledge and intent are required elements of the movant's case. For that reason, summary judgment is seldom granted in favor of a party objecting to discharge.

**ANALYSIS AND CONCLUSIONS OF LAW.**

    **A. NFU's claim against the Debtor.**

Before addressing the motion for summary judgment, the Court pauses to address the claim asserted by NFU which is alleged to be nondischargeable. Although when moving for summary judgment, NFU appears to assume Debtor's liability for the amount of the claim as filed, this is an unresolved issue.

NFU's unsecured proof claim is for $65,816.36, the amount it paid Leasing. In his answer to the complaint, Debtor raised several affirmative defenses relating to allowance of and the amount of the claim.[8] At least one of these is indirectly addressed by the memoranda before the Court and may ultimately be found to have merit. Those memoranda establish there are disputed issues of fact as to the value of the repairs that Debtor made to the Combine, or stated differently, there is a dispute as to the value of the proceeds of the Policy which benefitted Leasing, even though paid to Debtor pursuant to an erroneous Proof of Loss statement. If, as contended by Debtor, NFU paid Leasing more than amount of the diverted proceeds, this may provide a basis to object to the claim.

---

[7] *Id.*, 398 U.S. at 161, *quoting* J. Moore, Federal Practice ¶ 56.22[2], pp. 2824-2825 (2d ed. 1966).

[8] Doc. 7.

7

### B. The Combine was insured by the Policy.

One of the issues raised by Debtor in response to the motion for summary judgment is whether the damage to the Combine was insured by the Policy. Debtor asserts that Leasing was not entitled to payment form NFU because the Combine's serial number in Leasing's demand letter to NFU and in a schedule to the insurance Policy were erroneous. NFU responds that the incorrect serial numbers were typographical errors and the Combine was insured by the Policy.

The Court finds the Combine was insured. The correct serial number was H09650S685987, and this number is stated in the Lease, Leasing's UCC-1, and the Certificate of Insurance identifying Leasing as loss payee. The serial number was erroneously stated in a schedule to the Policy as H09650S6859987 and in the demand letter from FNEL as H09650S665987. Bish testified that the errors were typographical. The Court finds that all references were intended to be to the Combine. It is obvious that all parties, NFU, Leasing, and Debtor, intended the Combine to be covered by the Policy and Leasing intended to demand payment as loss payee under the Policy insuring the Combine, and NFU intended to make payment based upon this status. Intent governs the construction of insurance policies, and construction which favors the insured is favored.[9] Under these rules, minor errors in descriptions of insured property are not fatal. Descriptions in insurance policies do not serve the public notice function of recorded documents, such as mortgages and financing statements, where minor errors can be seriously misleading and provide a basis for lien avoidance.

---

[9] *E.g., Amer. Family Mut. Inc. Co. v. Wilkins,* 285 Kan. 1054, 179 P.3d 1104 (2008)*; Narron v. Cincinnati Ins. Co.*, 278 Kan. 365, 97 P.3d 1042 (2004).

### C. NFU is not entitled to summary judgment on its § 523(a)(2)(A) claim.

NFU moves for summary judgment on its § 523(a)(2)(A) claim. The subsection provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> * * *
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

"The bankruptcy court must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.'"[10] Establishing an exception to discharge based upon misrepresentation requires the following elements: (1) The debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied on the representation; (4) the creditor's reliance was justifiable; and (5) the creditor sustained the alleged loss and damage as a result of the representation having been made.[11] The Creditor has the burden of proof on all elements by a preponderance of the evidence.[12] "The discharge provisions of § 523 will be strictly construed against the creditor and liberally construed in favor of the debtor."[13] The frauds included within

---

[10] *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000), *quoting* 3 William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d 47:16, n. 62 (1999).

[11] *E.g., Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996) (stating five elements but requiring that creditor's reliance be reasonable); *Field v. Mans*, 516 U.S. 59, 74 (1995) (holding that creditor reliance must be justifiable).

[12] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[13] *In re Davis*, 246 B.R. at 652.

9

misrepresentations sufficient to deny discharge must "involve moral turpitude or intentional wrong; fraud implied in law, which may be established without imputation of bad faith or immorality, is insufficient."[14] Fraudulent intent need not be shown by direct evidence and "may be inferred from a totality of the circumstances, including a reckless disregard for the truth."[15] However, a finding of reckless disregard should be very narrowly interpreted because a misrepresentation is fraudulent only if the maker 'knows or believes the matter is not what he represents it to be.'"[16] The critical time is when the false statement was made.[17]

In this case, the Court finds, given the uncontroverted facts, that NFU has not shown it is entitled to judgment under § 523(a)(2)(A). It is uncontroverted that the Proof of Loss erroneously stated that John Deere Credit was the only person other than Debtor with an interest in the Combine. However, NFU has not met its burden of proof as to the first and second elements, that Debtor knew the Proof of Loss was false when he signed it and that he intended to deceive NFU. To sustain its burden of proof, NFU relies upon the fact that Debtor signed the Lease in February 2004, Debtor's knowledge of the terms of the Lease transaction, his ability to consult his records to determine Leasing's interest in the Combine before he signed the Proof of Loss in January 2006, Debtor's knowledge of financing transactions in general, and Debtor's

---

[14] 4 *Collier on Bankruptcy* ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2006).

[15] *First Nat'l Bank v. Cribbs (In re Cribbs)*, 327 B.R. 668, 673 (10th Cir. BAP 2005); *see Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir. 1986) (holding for objection to discharge under § 523(a)(2)(B), intent to deceive may be "inferred from a sufficiently reckless disregard of the accuracy of the facts.").

[16] *In re Cribbs*, 327 B.R. at 673.

[17] *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. BAP 1998) (holding when the issue is dischargeability of credit card debt, whether a representation of intent to repay is fraudulent is determined when the credit card was used to incur the debt subject to discharge).

experience in the handling of insurance property damages claims.  But nondischargeability requires knowledge of the falsity at the time the statement was made, or such recklessness that intent to deceive is evidenced.  The circumstantial evidence relied upon by NFU does not equate to knowledge of Leasing's interest at the time Debtor executed the Proof of Loss or of intent to deceive.  There is no evidence that Debtor supplied false information to be used in the Proof of Loss; rather it is uncontroverted that NFU's employee suggested that John Deere Credit had an interest.  The fact that Debtor presumably could have reviewed his records and determined that Leasing had an interest in the Combine is not persuasive; nondischargeability requires actual knowledge of the falsity of the representation or reckless disregard of the truth.  The standard is not what the Debtor should have known or his general knowledge of financial transactions.

      NFU's theory of fraudulent intent is that Debtor formulated and executed a deceitful plan whereby Debtor could keep the insurance proceeds for his own use by identifying John Deere Credit rather than Leasing as having a lien and not notifying Leasing of the loss.  But this theory is not proven by the uncontroverted facts.  There is no direct evidence of Debtor's intent, and the circumstantial evidence in support of this theory is very weak.  The best that can be said is that the uncontroverted facts are not inconsistent with this theory.  But they also are not inconsistent with an innocent mistake and/or Debtor's reasonable reliance on the Proof of Loss prepared by NFU, also in possession of information of Leasing's interest.  Further, there is no evidence that if Debtor had given notice of the loss to Leasing and if NFU had made the insurance check jointly payable to Debtor and Leasing, that Debtor would not have been able to deposit the proceeds after endorsement by Leasing and make the repairs in house, consistent

11

with his usual practice, just as he did when the check was jointly payable to Debtor and John Deere Credit.

In addition, the Court notes that Debtor argues NFU has not sustained its burden to show that it relied upon the representation, that its reliance upon the erroneous Proof of Loss was justifiable, and that it suffered the alleged loss as a result of the representation having been made. Since summary judgment must be denied because NFU has not sustained its burden of proof on the first and second elements, the Court will not decide these issues.

For the foregoing reasons, the Court denied NFU's motion for summary judgment under § 523(a)(2)(A).

**D. NFU is not Entitled to Summary Judgment on its § 523(a)(6) Claim.**

NFU also moves for summary judgment on its allegation that its claim against Debtor should be excepted from discharge under § 523(a)(6). That subsection provides a claim "for willful and malicious injury by the debtor to another entity or to the property of another entity" shall be excepted from discharge. Without proof of both a willful act and malicious injury the objection to discharge fails.[18] The exception "covers only acts done with the actual intent to cause injury."[19] In order to constitute a willful act, the debtor must intend to cause the consequences of his act or believe that the consequences are substantially certain to follow.[20] The malicious element requires proof that "the debtor either intend the resulting injury of

---

[18] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004).

[19] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[20] *In re Moore,* 357 F.3d at 1129*, citing Mitsubishi Motors Credit of Amer.,Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999).

intentionally take action that is substantially certain to cause the injury."[21]

"[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[22]

The uncontroverted facts are insufficient to satisfy these elements, so NFU's motion for summary judgment must be denied. To prove willful and malicious injury, NFU relies upon the same circumstantial evidence, and the same theory of motivation, as the Court has found insufficient to satisfy the elements of knowledge of falsity and intent to deceive for purposes of § 523(a)(2)(A). This evidence is likewise insufficient to prove maliciousness and willfulness. The Court cannot infer deliberate and intentional injury from these facts.

**CONCLUSION.**

For the foregoing reasons, NFU's motion for summary judgment is denied. The uncontroverted facts submitted by NFU are insufficient to sustain its burden of proof under both §§ 523(a)(2)(A) and (a)(6).

**IT IS SO ORDERED.**

###

---

[21] *Id.*, *quoting Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995).

[22] *Kawaauhau v. Geiger*, 523 U.S. at 61.